**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

_____
CRYSTAL MURDOCK,                              :
          Plaintiff,                                        :
     v.                                                        :
EAST COAST MORTGAGE CORP., et al,   :
          Defendants.                                 :
_____

**Hon. Joseph H. Rodriguez**

**Civil Action No. 10-4717**

**OPINION**

**RODRIGUEZ**, Senior District Judge

This matter comes before the Court on numerous motions filed by Defendants East Coast Mortgage Corp. ("East Coast"), OneWest Bank, FSB ("OneWest"), and McCabe, Weisberg & Conway ("McCabe") in the above captioned matter and in the associated cases also before the Court, captioned OneWest Bank, FSB v. Murdock et al., Civil No. 10-4695 (JHR/JS) ("the 4695 Case") and CitiMortgage, Inc et al. v. Murdock et al., Civil No. 10-5360 (JHR/JS) ("the 5360 Case"). Plaintiff Crystal Murdock ("Murdock") filed an amended sixteen-count complaint against all defendants on October 12, 2010, asserting causes of action sounding in violations of the Fair Housing Amendment Act ("FHAA"), 42 U.S.C. §§ 3601, et seq.; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq.; the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, et seq.; the New Jersey Fair Foreclosure Act ("NJFFA"), N.J.S.A. 2A:50-53 to -68; the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq.; fraud, civil conspiracy, professional negligence, and various other state law theories. (Dkt. Entry

No. 7, Second Amended Complaint).[1]  East Coast filed a motion [Dkt. Entry No. 26] on December 10, 2010, seeking to dismiss only the federal claims pursuant to Fed. R. Civ. P. 12(b)(6).  OneWest also filed a motion [Dkt Entry No. 28] on December 10, 2010 and McCabe filed a motion [Dkt. Entry No. 38] on January 18, 2011, seeking to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6).[2]

Oral argument was heard on the motions on August 4, 2011.  At oral argument, East Coast's counsel conceded its argument as to the timeliness of the FHAA claims.  Also Plaintiff's counsel voluntarily withdrew all claims against OneWest and McCabe, with the exception of the FDCPA claims.  As such, and for the reasons expressed on the record on that day, East Coast's motion will be denied in part as to the FHAA claims, the non-FDCPA related claims asserted against OneWest and McCabe will be dismissed pursuant to Fed. R. Civ. P. 41(a)(2), and the motions filed by OneWest and McCabe will be dismissed as moot in part as pertaining to the non-FDCPA claims.

Therefore, to resolve the present motions the Court focuses solely on the propriety of the FDCPA claims against East Coast, OneWest, and McCabe.  For the

---

[1]  Murdock filed similar Amended Third-Party Complaints in the 4695 Case on October 12, 2010 [Dkt. Entry No. 9], and 5360 Case on October 27, 2010 [Dkt. Entry No. 4] .  The Court notes that the NJFFA does not create a private right action.  See, e.g., Rivera v. Wash. Mut. Bank, 637 F.Supp.2d 256, 266 n.19 (D.N.J. 2009).  Murdock has subsequently withdrawn her purported NJFAA claims as to all parties.  (Dkt. Entry No. 32, Opp'n to OneWest/East Coast, p. 32; Dkt. Entry No. 39, Opp'n to McCabe, p. 29.)

[2]  In addition, OneWest and McCabe filed identical motions in the 4695 Case [Dkt. Entry Nos. 24 & 30, respectively] and the 5360 Case [Dkt. Entry Nos. 26 & 31, respectively], seeking the same relief requested in the present matter.  For the sake of brevity and clarity, the Court will hereinafter refer to the dispute through the lens of the present case.  The arguments raised and analysis below is equally applicable to the 4695 Case and the 5360 Case and appropriate orders shall issue in those cases, consistent with this Opinion.

reasons set forth below, the motions filed by East Coast, OneWest, and McCabe will be granted as to the FDCPA claims.

## I. Jurisdiction

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331, because Murdock pursues federal claims under the FDCPA and the FHAA. The Court has supplemental jurisdiction over Murdock's state law claims pursuant to 28 U.S.C. § 1367(a).

## II. Background & Procedural History

The parties are familiar with the convoluted and confused evolution of the three actions currently before the Court, the identities of all parties currently or previously involved in the litigation, and the specifics of the allegations advanced. Therefore, the Court recites only on the fairly straightforward facts that are germane to the instant motions.[3]

**A. Origination of the Burlington Property Loan**

In the fall of 2007, Murdock entered into two loan transaction with East Coast, a mortgage lender. On or about September 21, 2007, Murdock entered into a loan agreement with East Coast in connection with the refinancing of her home at 654 East 6th Street, Plainfield, New Jersey ("Plainfield Property"). (Id. at ¶ 3.) The following month, on or about October 24, 2007, Murdock entered into another loan agreement

---

[3] The background facts which constitute the basis for the parties' dispute are taken from the Second Amended Complaint and the exhibits attached thereto. The relevant procedural history is taken from the Court's review of the dockets of these three cases.

with East Coast in connection with the purchase of a property located at 7 Brook Drive, Burlington, New Jersey ("Burlington Property"). (Id.) She secured the promissory note ("Note") for the purchase of the Burlington Property by executing a mortgage ("Mortgage") on the subject property, naming Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for East Coast. (Id.)

On November 21, 2007 East Coast assigned the loan associated with the Plainfield Property to CitiMortgage, Inc. ("CitiMortgage"), who has been the holder and servicing agent of the Plainfield Property loan to date. (Id. at ¶ 4.) The loan associated with the purchase of the Burlington Property has seemingly taken a more arduous path, and is the subject of the present dispute before the Court.

**B. Tracking the Mortgage From East Coast to IndyMac to IndyMac Federal**

On July 11, 2008 IndyMac Bank, FSB ("IndyMac") was closed by the Office of Thrift Supervision ("OTS") and the FDIC was appointed as its receiver. (Second Am. Compl., Ex. A., Determination of Insufficient Assets To Satisfy Claims Against Financial Institution in Receivership, 74 Fed. Reg. 59,540 (FDIC Nov. 18, 2009)("FDIC Notice").) On the same day, OTS authorized creation of IndyMac Federal Bank, FSB ("IndyMac Federal"), a new federal savings bank for which the FDIC was appointed as conservator. (Id.) IndyMac's assets were transferred to IndyMac Federal under an agreement whereby the amount, if any, realized from the final resolution of IndyMac Federal after payment in full of IndyMac Federal's obligations was to be paid to the IndyMac receivership. (Id.) According to Murdock, on or about March 12, 2009, Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for East Coast Mortgage, executed an assignment of the Burlington Property Mortgage, without the Note, to

IndyMac Federal. (Second Am. Compl. at ¶ 116.) However, the Burlington Property Mortgage alone, without the Note, was transferred by East Coast to MERS in its capacity as nominee. (Id. at ¶ 110.)

### C. IndyMac's Foreclosure Efforts and Assignment(s) to OneWest

On March 19, 2009, IndyMac Federal was placed in receivership and substantially all of its assets were sold. On that date, the FDIC Receiver-IndyMac, the FDIC Conservator-IndyMac Federal and OneWest entered into multiple loan sale agreements ("Master Purchase Agreement"), whereby OneWest assumed substantially all of the assets of the FDIC Conservator-IndyMac Federal, including the Mortgage on the Burlington Property. (Id. at ¶ 119; Ex. A, June 1, 2010 FDIC Letter regarding Burlington Foreclosure Case.)

One week later, on March 26, 2009, the law firm of Zucker, Goldberg & Ackerman ("Zucker") filed a Complaint for Foreclosure on the Burlington Property on behalf of IndyMac Federal in the Superior Court of New Jersey, Chancery Division, Burlington County, bearing docket number F-16148-09 ("Burlington Foreclosure Case"). (Id. at ¶ 120.) On January 27, 2010, McCabe replaced Zucker as counsel for IndyMac Federal. (Id. at ¶ 122.) On May 15, 2010, the law firm of Parker McCay also entered an appearance and thereafter filed a motion on June 1, 2010 to substitute OneWest as plaintiff in lieu of IndyMac Federal. (Id. at ¶¶ 123, 125.) The trial judge entered an order on June 24, 2010, substituting OneWest as plaintiff in the Burlington Foreclosure Case. (Id. at 127.)

### D. The Original Third Party Complaint and Removal to Federal Court

On July 13, 2009, Murdock filed an Answer, Counterclaim, and Third Party

5

Complaint, alleging that East Coast and various individuals associated with the origination of the Burlington Property loan and refinancing of the Plainfield Property made various fraudulent misrepresentations to induce her into entering the mortgages, knowing that she was unable to afford the combined monthly payments.[4] Murdock's Third Party Complaint was severed from the foreclosure proceedings and transferred to the Law Division on June 3, 2010, bearing docket number L-374-10 ("Murdock's Case in Chief"). By consent orders dated July 27, 2010 and August 6, 2010, the FDIC entered the Burlington Foreclosure Case and Murdock's Case in Chief, respectively. The FDIC removed both matters to this Court on September 13, 2010; the Burlington Foreclosure Case being herein referred to as the 4695 Case and Murdock's Case in Chief being herein referred to as the present matter.

**E.  The Second Amended Complaint and the Present Dispute**

Murdock filed a Second Amended Complaint in this Court on October 12, 2010.[5]

---

[4] The initial Third Party Complaint contained seven counts: (1) Misrepresentation; (2) Breach of Fiduciary Duty; (3) Breach of the Implied Covenant of Good Faith and Fair dealing; (4) Civil Conspiracy; (5) Consumer Fraud, N.J.S.A. 56:8-1, et seq.; (6) Violation of the Fair Housing Amendment Act, 42 U.S.C. § 3601, et seq.; (7) Violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq. Murdock filed an Amended Third Party Complaint on December 17, 2009, naming additional defendants and adding an additional count: (8) Violation of N.J.S.A 46:10A-6 and Professional Negligence and/or Legal Malpractice. East Coast was a named defendant in all claims. OneWest and McCabe were not named as defendants in either the Third-Party Complaint or Amended Third-Party Complaint.

[5] In the interest of completeness, the Court notes that on October 12, 2010, the FDIC removed a similar Foreclosure/Third-Party Complaint to the District of New Jersey - Newark Vicinage, from the Superior Court of New Jersey, Chancery Division, Union County, bearing docket number F-59134-09, herein referred to as the 5360 Case. The 5360 Case concerns CitiMortgage's attempt to foreclose on Murdock's Plainfield Property and Murdock's subsequent Third Party Complaint which asserts the same allegations as in the present matter. Unlike in the Burlington County actions, Murdock's Third Party Complaint was not severed from the foreclosure action prior to removal. On

In addition to other state law claims, Murdock asserts that East Coast, MERS, FDIC (as Receiver for former foreclosure plaintiff IndyMac Federal), Zucker, McCabe, Parker, and others acted in concert and/or conspired to violate the FDCPA, based on perceived inconsistencies and anomalies in the chain of ownership of the Burlington Property loan from the origination by East Coast until OneWest was substituted in as plaintiff in the foreclosure proceedings. (Id. at ¶¶ 132-36.)[6]

Murdock contends that during the course of discovery, on or about April 15, 2010, she first became aware from answers and responses to her First Set of Requests for Admissions furnished by McCabe that IndyMac Federal was not the holder of the Note and Mortgage at the commencement of the foreclosure action. (Id. at ¶¶ 121, 129-31.) Specifically, Murdock alleges she discovered that, as of the March 19, 2009 Master Purchase Agreement, OneWest has serviced the loan which is owned by another entity, Federal National Mortgage Association ("Fannie Mae"). (Id.) Thus, Murdock argues that IndyMac Federal did not own the loan instruments at the time the initial complaint was filed and that FDIC, IndyMac Federal and Zucker knew or should have known that they had no right and/or legal authority to commence foreclosure. (Id. at ¶ 121.) Murdock also references the existence of two documents, dated May 19, 2010 and June

---

October 27, 2010, Murdock filed an Amended Answer, Amended Counterclaim, and Amended Third Party Complaint in the 5360 Case, raising the same allegations and claims raised in the Second Amended Complaint in the present matter and the 4695 Case. On October 29, 2010, the 4717 Case and 4695 Case were consolidated for discovery and case management purposes. On February 16, 2011, the 5360 Case was reassigned to this Court. On February 18, 2011, all three cases were consolidated for pretrial purposes.

[6]     Murdock filed a stipulation of dismissal without prejudice as to all claims against the FDIC as receiver for IndyMac Federal on November 19, 2010, [Dkt. Entry No. 19], and a stipulation of dismissal with prejudice as to all claims against Parker on July 14, 2011 [Dkt. Entry No. 51].

14, 2010, which both purport to assign the rights and interest in the Note and Mortgage from Indymac Federal to OneWest as proof of a conspiracy between the defendants to enable OneWest to continue pursuit of the allegedly illegal foreclosure began by Indymac Federal.  (Id. at ¶¶ 124-126.)

Murdock explains the numerous inconsistencies and confusion in the rightful ownership of the Note and Mortgage associated with the Burlington Property as follows:

> This incestuous and Kafkaesque relationship between the regulatory agencies (FDIC) and the loan entities allows fraud to be perpetrated upon the courts and mortgagors in foreclosure actions.  Nowhere else would the Court sanction such a charade.  One can only hazard or guess the amounts of mistakes and/or fraud that has been perpetrated in the past.

(Id. at ¶ 126.)  According to Plaintiff, this pattern of inconsistency and opaque transactions supports her contention that East Coast, OneWest, and McCabe, along with the other entities who have interacted with the Burlington Property loan, conspired to violate the FDCPA in order to increase their fees, charges, and costs above what they would have been entitled to had they abided by the requirements of the statute.  (Id. at ¶¶ 136-136.)[7]

---

[7]    In Murdock's 79 page, 273 paragraph Second Amended Complaint, she asserts sixteen causes of action.  The Court notes that Counts IX-XVI merely recite, verbatim without further enhancement, the same legal conclusions found in four paragraphs contained in the Facts Common to All Claims section:

> Based upon the foregoing set of facts and circumstances, defendants, East Coast Mortgage Corp., FDIC, Zucker Goldberg & Ackerman, McCabe Wesiberg & Conway, Parker McCay, Erica Johnson-Seck, and MERS, along with plaintiff, OneWest Bank, FSB, and FDIC (as the receiver for the former plaintiff, IndyMac Federal Bank, FSB), have all acted in concert and/or engaged in a conspiracy to violate the Fair Debt Collection practices Act and the New Jersey Fair Foreclosure Act ("FFA"), N.J.S.A. 2A:50-53 to -68.
> As a part of the conspiracy, defendants . . . profited from their conspiratorial activities in the form of receiving commissions, fees,

## III.  Rule 12(b)(6) Standard of Review

A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  Under Fed. R. Civ. P. 8(a)(2), a pleading must contain only a "short plain statement of the claim showing that the pleader is entitled to relief."  A plaintiff is not required to plead evidence.  <u>Bogosian v. Gulf Oil Corp.</u>, 561 F.2d 434, 446 (3d Cir. 1977).  However, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal quotations omitted).

---

> charges, and costs above and beyond what they would have been entitled to receive if they had abided by the requirements of the Fair Debt Collection Practices Act and the New Jersey Fair Foreclosure Act ("FFA"), N.J.S.A. 2A:50-53 to -68.
> 
>   As a further part of the conspiracy, defendants . . . agreed to support on another, coverup and otherwise protect each other in connection with their fraudulent, conspiratorial, and illegal acts and omissions by failing to comply with the Fair Debt Collection Practices Act and the New Jersey Fair Foreclosure Act ("FFA"), N.J.S.A. 2A:50-53 to -68.
> 
>   As a direct result of defendants . . . intentional and willful actions, Murdock sustained economic damages and is continuing to sustain further economic and other damages as a result of having to engage in the lengthy and costly defense of this illegal, fraudulent, misleading, and conspiratorial foreclosure action.  Moreover, the conduct, and/or omissions of all defendants, including the former and current plaintiff set upon a designed and calculated course to dupe not only Murdock but the Courts adjudicating this matter.

(Second Am. Compl., ¶¶ 133-36, 235-38, 240-43, 245-48, 250-53, 255-58, 260-63, 265-68, 270-73.)

When reviewing a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009) (internal quotations omitted).[8] The question is not whether the plaintiff will ultimately prevail. Watson v. Abington Twp., 478 F.3d 144, 150 (3d Cir. 2007). Rather, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. - - - , 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

To determine the sufficiency of a complaint, the Third Circuit has held that the Court must conduct a three-step test. Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). First, the Court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Next, the Court must separate the factual allegations from the legal conclusions. Id. at 1950. While the well-pleaded facts are accepted as true, legal conclusions are not entitled to the assumption of truth. Id. Last,

---

[8] "Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (internal quotation marks and citations omitted) (emphasis deleted). To that end, "courts may consider a document that a defendant attaches as an exhibit to a motion to dismiss, provided that its authenticity is undisputed and that plaintiff's claims are based on the document." Rogan v. Giant Eagle, Inc., 113 F.Supp.2d 777, 781 (W.D. Pa. 2000) (citing Pension Benefit Guaranty Corp. v. White, 998 F.2d 1192, 1196 (3d Cir.1993)). Further, "a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint." Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, (3d Cir. 1999). These exceptions prevent a plaintiff with a legally deficient claim from surviving a motion to dismiss by failing to attach a dispositive document on which it relied.

10

the Court must determine whether the well-pleaded, non-conclusory factual allegations "plausibly give rise to an entitlement to relief." Id.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949. Therefore, the complaint must do more than allege the plaintiff's entitlement to relief; it must "show" such an entitlement. Fowler, 578 F.3d at 211. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not 'show[n] that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). Ultimately, assessing plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Fowler, 578 F.3d at 211 (quoting Iqbal, 129 S. Ct. at 1949).

### IV. Discussion

East Coast, OneWest and McCabe first move to dismiss the FDCPA claims based on Murdock's failure to timely raise the alleged violation within the statute of limitations.[9] Murdock unpersuasively, if not disingenuously, argues that she is entitled to the extraordinary remedy of equitable tolling of the limitations period because she was actively misled by the defendants. Because Murdock did not file her FDCPA claims within one year of the alleged violation and because she has not demonstrated that she

---

[9] A defendant may prevail on a statute of limitations defense in the context of a motion to dismiss so long as the untimeliness is apparent from the face of the complaint. See W. Penn Allegheny Health Sys. v. UPMC, 627 F.3d 85, 105 n. 13 (3d Cir.2010).

was misled nor that she exercised reasonable diligence in investigating and bringing her claims, her FDCPA claims will be dismissed as time-barred.

**A. FDCPA**

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e. The FDCPA prohibits, generally, the use of harassing oppressive, and abusive techniques in connection with the collection of debts, 15 U.S.C. § 1692d; the use of false, deceptive, or misleading representations in connection with the collection of debts, 15 U.S.C. § 1692e; and the use of unfair or unconscionable means in connection with the collection of debts, 15 U.S.C. § 1692f. Section 1692k provides a private right of action to any person with respect to whom a debt collector has violated the statute. 15 U.S.C. § 1692k(a). However, an action under the statute must be commenced "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d).

**B. The Doctrine of Equitable Tolling**

Equitable tolling is an extraordinary remedy that can rescue a claim otherwise barred by the statute of limitations "when a plaintiff has 'been prevented from filing in a timely manner due to sufficiently inequitable circumstances.'" Santos v. United States, 559 F.3d 189, 197 (3d Cir. 2009) (quoting Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 240 (3d Cir. 1999)). The doctrine applies in three limited circumstances: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from

asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." Id. (citing Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994)). To be entitled to tolling on the grounds of fraudulent concealment, a plaintiff "must allege that the defendants' conduct prevented him 'from recognizing the validity of [her] claim within the limitations period.'" Kliesh v. Select Portfolio Servicing, Inc., 419 Fed. App'x 268, 271 (3d Cir. 2011) (quoting Mathews v. Kidder, Peabody & Co., 260 F.3d 239, 256 (3d Cir. 2001)) (alteration in original).

The principles of equitable tolling do not extend to "garden-variety claims of excusable neglect." Santos, 559 F.3d at 197 (quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990). Therefore, a plaintiff must also establish that she exercised due diligence in attempting to uncover the relevant facts and preserving her claim. Id.; see also Cetel v. Kirwan Financial Group, Inc., 460 F.3d 494, 509 (3d Cir. 2006). Ultimately, a plaintiff seeking to invoke the extraordinary remedy of equitable tolling bears a heavy burden and the Court should extend its application only sparingly. See Hedges v. United States, 404 F.3d 744, 751 (3d Cir. 2005).

**C. Analysis**

Murdock does not identify in her Second Amended Complaint which provision of the FDCPA was violated nor does she identify which defendant specifically violated the provision. However, Murdock appears to allege that Zucker and IndyMac Federal violated the FDCPA on March 26, 2009 when it filed the foreclosure complaint in the name of IndyMac Federal and that East Coast, OneWest, and McCabe conspired with Zucker, IndyMac Federal and others, to deceive Murdock as to IndyMac Federal's right

to foreclose on the property.[10]  Therefore, Murdock's FDCPA cause of action began to accrue on March 26, 2009, or shortly thereafter, when she was served with the foreclosure complaint.  See Parker v. Pressler & Pressler, LLP, 650 F. Supp. 2d 326, 338 (D.N.J. 2009).  Because Murdock did not file her Second Amended Complaint until October 12, 2010, nearly 19 months after the filing of the allegedly fraudulent complaint, her FDCPA claims are barred by the statute of limitations.

Murdock acknowledges that the FDCPA has a one year statute of limitations.  However, she argues that the accrual of her FDCPA claims was shielded from her by the fraudulent conduct of East Coast, McCabe, OneWest and others until McCabe provided answers to her First Set of Requests for Admission on April 15, 2010, which exposed the alleged deficiencies in the foreclosure proceeding commenced in the name of IndyMac.  (Opp'n to OneWest/EastCoast, p. 18, 23-24; Opp'n to McCabe, pp. 15, 19-20.)[11]  She

---

[10]   The Court's understanding of Murdock's FDCPA claims is aided by the characterization of the claims in her briefs in opposition and from her clarification at oral argument on the motions.  Murdock argues that "she has sufficiently set forth viable claims for violation of the FDCPA against the movants on the grounds that the initial Complaint for Foreclosure was filed in the name of an entity that had no connection to the subject debt sought to be collected."  (Opp'n to OneWest/East Coast, p. 34; Opp'n to McCabe, p. 31.)  Murdock further explains her theory as to East Coast's FDCPA liability as follows: "In the event that East Coast Mortgage Corp. is still in possession and the owner of the Note, it has participated in fraudulent conduct which is violative of the 'Unfair Practices' and 'False and Misleading Representations' and 'Furnishing Certain Deceptive Forms" provisions of the FDCPA.'  (Opp'n to OneWest/EastCoast, p. 22.)  To the extent that Murdock attempts to assert a cause of action against East Coast based on this allegation, it is not raised in her Second Amended Complaint and is not properly considered when ruling on a motion to dismiss.  Further, Murdock merely speculates, rather than alleges, that East Coast is fraudulently in possession of the loan instruments.

[11]   Murdock also argues that she was prevented from timely asserting her rights because defendants concealed the truth from her through "the filing of false and fraudulent Assignments of Mortgages on May 19, 2010 and June 14, 2010 (these assignments were discovered by Crystal Murdock after OneWest was substituted for IndyMac Federal Bank, FSB, on June 24, 2010).  (Opp'n to OneWest/EastCoast, p. 24;

14

further argues that she acted with expediency by filing her Second Amended Complaint on October 12, 2010, six months after discovering the violation. (Opp'n to OneWest/EastCoast, p. 24; Opp'n to McCabe, pp. 20.) Therefore, Murdock argues that the accrual of her claims should be tolled. She is incorrect on both counts.

First, Murdock does not plead sufficient facts to establish that the defendants actively misled her. Murdock's FDCPA claim is predicated on the fact that when Indymac Federal filed the foreclosure complaint on March 26, 2009, it was "a defunct and non-existent entity." (Opp'n to OneWest/EastCoast, p. 4.; Opp'n to McCabe, p. 2.) She contends that the defendants actively misled her because no efforts were made by IndyMac Federal or its counsel to apprise her of IndyMac Federal's interest in the Mortgage or Note associated with the Burlington Property. (Opp'n to OneWest/EastCoast, p. 4.; Opp'n to McCabe, p. 3.) Further, Murdock supports her argument on the grounds that the Note and Mortgage have seemingly become separated, stating:

> Is clearly impossible for one mortgage and one note to follow two different tracks simultaneously without the intent to deceive Crystal Murdock and this Court or any other entity and/or individual who attempts to ascertain the ownership and/or possession of the subject mortgage and note which are being litigated herein.

(Opp'n to OneWest/EastCoast, p. 6.; Opp'n to McCabe, p. 4.) These are merely legal conclusions, rather than factual allegations, that are not entitled to an assumption of truthfulness when ruling on a Rule 12(b)(6) motion to dismiss. Iqbal, 129 S. Ct. at 1950.

---

Opp'n to McCabe, p. 31.) This argument is without merit because Murdock argues she was put on notice of her potential FDCPA claim on April 15, 2010. Therefore, the alleged actions taken by the defendants after April 15, 2010, could not effect Murdock's ability to timely pursue her FDCPA claims.

15

In addition, Murdock fails to establish that she exercised due diligence in uncovering the relevant facts and preserving her claim. Murdock attempts to argue that she was unaware of the possibility that IndyMac Federal did not hold the Note until she received confirmation from McCabe in April of 2010. (Second Am. Compl., ¶¶ 129-30.) However, Murdock's unsupported contention is belied by the facts alleged and documentation relied on in her Second Amended Complaint. Murdock's First Set of Requests for Admissions filed in the Burlington Foreclosure Case repeatedly, if not exclusively, references the March 19, 2009 Master Purchase Agreement and transfer of substantially all assets from IndyMac Federal to OneWest.[12] These Requests for Admissions are dated November 6, 2009, indicating that Murdock was aware of the transfer of assets less than eight months after the filing of the initial foreclosure complaint. Further, the Nov. 18, 2009 FDIC Notice, attached as an exhibit to the Second Amended Complaint, placed Murdock and her counsel on notice that: "On March 19, 2009, IndyMac Federal was placed in receivership and *substantially all of its assets were sold*." (Second Am. Compl., Ex. A., FDIC Notice.) Thus, Murdock's assertion that "unfortunately, this fact was not readily known and/or ascertainable to Crystal Murdock until the Foreclosure Action was well underway," (Opp'n to OneWest/EastCoast, p. 4.; Opp'n to McCabe, pp. 2-3,) is contradicted by the record.

Because Murdock has failed to show that the defendants actively misled her from ascertaining the existence of her FDCPA claims, and because she has failed to show that she exercised reasonable diligence in investigating and bringing these claims, the

---

[12] Because Murdock relies on this document in her Second Amended Complaint, (Second Am. Compl., ¶¶ 129-30), it is properly considered by the Court. See U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002).

16

extreme remedy of equitable tolling is inappropriate.  See Santos, 559 F.3d at 197.  Accordingly, Murdock's FDCPA claims are dismissed as time-barred.[13]

## V. Conclusion

For the reasons stated above, East Coast's motion will be denied in part as to the FHAA claims and granted in part as to the FDCPA claims, OneWest's motion will be dismissed in part as moot as to the non-FDCPA claims and granted as to the FDCPA claims, and McCabe's motion will be dismissed in part as moot as to the non-FDCPA claims and granted as to the FDCPA claims.  The appropriate orders shall issue.

Dated: August 17th, 2011

       /s/ Joseph H. Rodriguez
Hon. Joseph H. Rodriguez,
United States District Judge

---

[13]     To the extent that Murdock's FDCPA claim is predicated on activity other than the filing of the foreclosure complaint and alleged attempts by the defendants to conceal IndyMac Federal's interest in the loan, she fails to plead with sufficient particularity to show an entitlement to relief under any provision of the FDCPA.  Iqbal, 129 S. Ct. at 1950.  The Court will not attempt to decipher which additional conduct alleged in the Second Amended Complaint Murdock feels violated her rights under the FDCPA and then further endeavor to guess which provision of the FDCPA was violated by that conduct.